**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALFRED M. EDMUNDS Jr.,** | : | **CIVIL ACTION** |
| **Petitioner** | : | |
| | : | |
| **v.** | : | **NO. 00-6084** |
| | : | |
| **JAMES MORGAN, et al.** | : | |
| **Respondents** | : | |

**M E M O R A N D U M**

**STENGEL, J.** September , 2005

## I. INTRODUCTION

Alfred M. Edmunds Jr. ("Edmunds") filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Edmunds was convicted in the Court of Common Pleas of Philadelphia County of aggravated assault, a felony of the first degree, and recklessly endangering another person, a misdemeanor of the second degree. He was sentenced to serve five to ten years of incarceration. His case was tried before the Honorable Lisa A. Richette without a jury in 1995.

Magistrate Judge Wells issued a Report and Recommendation denying Edmunds' *habeas* petition. Edmunds then filed his objections to the report and recommendation pro se. Counsel was later appointed for Mr. Edmunds. Counsel was granted multiple time extensions and finally filed his amended objections to Magistrate Judge Wells' Report and Recommendation. The Government has filed its response, and I now dismiss Edmunds' objections, deny his *habeas* petition, and adopt the Magistrate Judge's Report and Recommendation.

## II. BACKGROUND and PROCEDURAL HISTORY

Magistrate Judge Carol Sandra Wells' 2002 Report and Recommendation accurately presents the relevant facts and procedural history of this case:

> Three men - Edmunds, Jeffrey Walters, and Edmunds' friend Tony who had arrived in the Philadelphia area in order to attend a wedding the next day in Jackson Heights, New York along with Edmunds - met at Edmunds' house on 10 November 1994. They then left together and traveled towards The Ponytail Bar, located on 52nd Street between Delancey and Pine Streets. Jeffrey went straight to the bar at approximately 10:30 pm, while Edmunds and Tony went to the nearby Big George's Restaurant for dinner. The diners did not arrive at the bar until 11:45 pm. Despite Edmunds' desire to leave The Ponytail Bar early, Jeffrey kept insisting that he be given a few more minutes to speak further with Karen the barmaid. The "few more minutes" turned into several hours. At 2 am, after the three men and Karen departed the bar, Edmunds dashed back to use the facilities. It was during this time and in Edmunds' absence that the altercation between Jeffrey Walters and Antoine James began. Outside the bar, the 6'2"-6'3" highly intoxicated Antoine James began yelling at Karen, "You, ain't shit, bitch." He then turned towards Jeffrey and exchanged words with him.
>
> Upon Edmunds' return, the group of four entered Jeffrey's car to drive across the street to the all-night A-Plus Mini-Market so that Jeffrey could purchase cigarettes for Karen. Entering the store, Jeffrey again encountered Antoine. The two continued to argue. After purchasing the cigarettes, Jeffrey attempted to leave. As he was leaving, Antoine jumped on his back. After being told to get off, Antoine instead hit Jeffrey in the chest with his elbow, and the two began to argue once again.
>
> Meanwhile, back in the car, Karen spotted the fight which was about to break out and urged Edmunds and Tony to intercede. As Edmunds looked over, he observed Jeffrey taking off his hat as if he were getting ready for a brawl. When Edmunds went over to Jeffrey and attempted to understand the problem, he was told that Antoine had been pushing Jeffrey and going through his pockets. Despite Edmunds' efforts to convince his friend to leave the area, Jeffrey and Antoine instead continued to argue. After returning to the car and pointlessly waiting for Jeffrey, Edmunds went back again to the dispute in order to once again convince his friend to leave. The two friends finally began walking toward the car when Jeffrey turned around and returned to argue with Antoine. Edmunds followed his friend again, only to find that Antoine now began to swear at him.
>
> While Jeffrey and Antoine continued to argue, three or four of Antoine's friends approached from across the street. They wanted to know what was happening. Both Edmunds and Jeffrey mentioned to the group that Antoine was

very drunk and that they should take him home before trouble began anew. One in the group began to restrain Antoine. Despite his efforts, Antoine broke free. With his system pumped up with both a blood alcohol level of .330 as well as the presence of both PCP and cocaine, Antoine began swinging at Edmunds. His fist landed on his intended victim. Stunned, Edmunds reacted out of reflex and returned the punch. At that point, four or five men grabbed Edmunds and began to push him. Although he struggled to remain on his feet, he was eventually overpowered and thrown to the ground. Upon the impact of landing, his firearm became disengaged from his holster and hit the ground. Although he received several blows to the head, he [Edmunds] remained focused on retrieving his weapon. That weapon was loaded, cocked, and without any safeties. He managed to slip away from the melee and crawl towards the gun. Upon his arrival, he found Antoine standing over the firearm and trying to reach for it. While attempting to grab the weapon so that he could leave, Edmunds got hit by Antoine. With gun in hand, Edmunds swung at Antoine in an effort to avoid being struck again. It was at this moment that Antoine suffered a single gunshot wound to the head.

Since the frightened barmaid [Karen] had taken off in Jeffrey Walters' vehicle, the three men- Jeffrey, Edmunds, and Tony - departed the scene on foot. Unaware that anyone had been shot, Edmunds returned to his home that night and left the next morning with Tony for the wedding in New York. When he telephoned Jeffrey from New York to learn whether or not he had recovered his car, Edmunds learned of the shooting and thus returned immediately to Philadelphia to turn himself in to the Police. *Commonwealth v. Edmunds*, November Term, 1994, No. 0860 slip op. at 2-5 (C.C.P. Phila. July 8, 1996).

Following a nonjury trial, Edmunds was convicted on September 20, 1995 before the Honorable Lisa A. Richette, in the Court of Common Pleas of Philadelphia County. He was convicted for aggravated assault and reckless endangerment of another person. *See id.* at 1. Thereafter, on November 22, 1995, Edmunds was sentenced to a term of imprisonment of five to ten years for aggravated assault and a suspended sentence for recklessly endangering another person. *See id.*

On December 4, 1995, counsel filed post sentence motions. Furthermore, on December 19, 1995, counsel filed supplemental post-sentence motions. After Antoine James testified at a hearing on April 3, 1996, Judge Richette found trial counsel ineffective for not calling Mr. James to testify. Accordingly, she vacated her sentence and granted petitioner a new trial, without considering his additional ineffectiveness claims. *See Edmunds*, November Term, 1994, No. 0860 at 1-2.

On June 17, 1997, Pennsylvania Superior Court, in response to the government's appeal, concluded that a reasonable basis for trial counsel's chosen course of action existed. *See Commonwealth v. Edmunds*, C.P. No. 9411-0860, Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(B) (C.C.P. Phila. June 3, 1996). Therefore, it reversed Judge Richette's order

and reinstated her original sentence. *Commonwealth v. Edmunds*, No. 01659 PHL 1996, slip op. At 9, 700 A.2d 1023 (Pa. Super. June 17, 1997). The Supreme Court of Pennsylvania denied *allocatur* on December 31, 1997. *See Commonwealth v. Edmunds*, 705 A.2d 1305 (Pa. 1997).

Judge Richette refused to hear Edmunds' supplemental post-sentence issues because she lacked jurisdiction. See N.T., 4/8/98, at 12; *Edmunds*, CP 9411-860, Order (C.C.P. Phila. April 8, 1998). Edmunds appealed her refusal to Superior Court and the case was remanded to the trial court for a determination of all remaining issues. *See Commonwealth v. Edmunds*, No. 1467 Phila. 1998, (Pa. Super. Order March 25, 1999). Thereafter, on June 8, 1999, Judge Richette, after a hearing, denied Edmunds' remaining post-sentence motions. *See Edmunds*, November Term, 1994, C.P. No. 0860, slip op. At [2].

Edmunds sought relief from this adverse ruling in the Superior Court of Pennsylvania on the grounds that: 1) trial counsel was ineffective for failing to file a motion in limine and/ or for failing to object to the evidence the Commonwealth used to impeach Petitioner's character witnesses; 2) the trial court deprived Petitioner of a fair trial and committed reversible error by using the Commonwealth's character impeachment evidence as substantive proof of Edmunds' guilt; and 3) trial counsel was ineffective for failing to object to the trial court's consideration of Edmunds' previous misconduct as evidence of guilt in adjudicating the criminal matter presently before the court. *Commonwealth v. Edmunds*, No. 2056 EDA 1999, Mem. Op. At 3 (Pa. Super. May 15, 2000). Superior Court affirmed the judgment of sentence on May 15, 2000, see id. at 1, and the Supreme Court refused *allocatur* on September 14, 2000. *Commonwealth v. Edmunds*, 761 A.2d 548 (Pa. 2000).

Edmunds then filed his first federal habeas corpus petition on December 1, 2000. He raised therein the identical three issues presented to all state appellate courts, as well as an additional claim that prior counsel were ineffective for failing to address these issues on appeal. Inasmuch as Edmunds' fourth claim was unexhausted, the district court dismissed his "mixed petition," without prejudice. On July 20, 2001, Edmunds filed an amended petition, omitting the unexhausted claim. Since Edmunds fairly presented all of his pending claims at least once to every level of state court, federal exhaustion requirements have been met, and this court will determine the merits of his assertions. *See* 28 U.S.C. § 2254(b); *Evans v. Court of Common Pleas*, Delaware County, Pennsylvania, 959 F.2d 1227, 1230-31 (3d Cir. 1992) (*citing Picard v. Connor*, 404 U.S. 270, 275 (1971)).

## III. STANDARD of REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2266, an application for a writ of *habeas corpus* on behalf of a defendant shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The United States Supreme Court interpreted this statute and more clearly defined the two-part standard of review in Williams v. Taylor, 529 U.S. 362, 404-405 (2000). Under the first prong of the review, a state court decision is "contrary to" the "clearly established federal law, determined by the Supreme Court of the United States," (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]." Id. at 405. Pursuant to the second prong, a state court decision can involve an unreasonable application of Supreme Court precedent: (1) "if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or

unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407-408. Under this clause, however, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly-established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410.

## IV. DISCUSSION

Edmunds' current objections raise three points: 1) that the Magistrate Judge erred by failing to consider whether counsel was ineffective for failing to call the victim as a witness at trial, 2) that Judge Richette denied Edmunds his right to due process and a fair trial by improperly using character evidence in reaching her verdict, and 3) that Edmunds' counsel was ineffective for failing to object to Judge Richette's statements.

### A. Was the Magistrate Judge wrong in not considering whether Edmunds' counsel was ineffective for failing to call the victim?

With regard to Edmund's first objection, this issue was not raised in Edmunds' original § 2254 *habeas* petition to the Magistrate Judge and was therefore not properly presented for review. Edmunds now desires to reopen the record in order to more fully argue whether trial counsel was ineffective in not calling the victim to testify. In Edmunds' current objections, no precedent or reason has been given as to why this Court should so act. Edmunds concedes that it was his own error in not arguing this issue sooner. The respondent now argues Edmunds is time barred from adding any new or different claims to his original petition filed within the AEDPA's one year statute of limitations. The law in this area, however, gives the court more discretion. "A District

Court may in its discretion, permit an amendment to a petition to provide factual clarification or amplification after the expiration of the one-year period of limitations, as long as the petition itself was timely filed and the petitioner does not seek to add an entirely new claim or new theory of relief." United States v. Thomas, 221 F.3d 430, 436 (3d Cir. 2000). This discretion is derived from Fed. R. Civ. P. 15(c)(2). Id. In this case, however, Edmunds is not attempting to clarify a claim that was properly presented in his amended petition. His specific allegation that counsel erred in not calling the victim is an entirely new claim requiring proof of new facts. Because this is a new claim, not a clarification or amplification, it is time barred.

Further, the Pennsylvania Superior Court provided a sufficiently compelling justification for denying Edmunds' claim. In its opinion overturning Judge Richette's decision to grant a new trial based upon this ineffective assistance of counsel claim, the court reasoned that "since the Commonwealth did not call the victim as a witness, there was no unfavorable testimony to be impeached by trial counsel." Commonwealth v. Alfred Edmunds, No. 1659 Philadelphia 1996, slip op. at 8 (June 17, 1997). Additionally, the testimony provided by the victim at a post-verdict motion hearing was helpful neither to the Commonwealth nor the defense. See 1997 Pa. Super. Opinion (Exhibit C of 2001 Response to Amended Petition) at 8 ("the victim's testimony during the ineffectiveness hearing added nothing to support Appellee's claim of self defense"). That testimony confirmed that the victim did not see who shot him, N.T. 4/3/96, 48-49, as Judge Richette found, Id. at 57, though he remembered petitioner being present, the victim's testimony

also demonstrated his lack of responsiveness and inability to recall details consistently. This ruling by the Pennsylvania Superior Court is not unreasonable nor does it go against clearly established federal law.

B. Did Judge Richette deny Edmunds his right to due process and a fair trial by improperly using impeachment evidence?

Edmunds contends that the trial court impermissibly relied upon character evidence admitted solely for purposes of impeachment in making its decision. As evidence of this claim Edmunds points to a verbal exchange between the court and counsel made during the prosecution's closing remarks:

> MR. LAUGHLIN [the prosecutor]: Judge, when you look at this case, it's not the background that's important, it's what happened out there.
>
> THE COURT: Oh yes, I agree with you.
>
> MR. LAUGHLIN: And what he says, his words and his deeds, "motherfucker." He lost it, Judge. And he pulled that trigger, he pointed it. And if this was a murder case, I would say malice, "motherfucker," and he pulled the trigger. He almost killed that man.
>
> THE COURT: I found it very revealing that when the defendant was testifying about his prior suspension, he said, I could have killed him but I didn't because he was a juvenile, I shot in the air.
> You heard that.
>
> MR. LAUGHLIN: I heard that. He is a little too quick on the trigger.
>
> THE COURT: Right.
>
> MR SCUDERI [defense counsel]: That situation, the other person had a gun, too.
>
> THE COURT: Yes well, that's what he says.

During the trial, Edmunds presented character evidence by calling witnesses to give their opinions of Edmunds' reputation within his community as a peaceful and law-abiding person. On cross-examination, counsel for the Commonwealth asked three of Edmunds' character witnesses if they knew about Edmunds' prior suspension from the Highway Patrol for unlawfully discharging his gun. This was proper impeachment of a character witness.[1] Later, during Edmunds' direct examination, Edmunds attempted to explain the suspension by describing the incident.[2] During the course of his explanation Edmunds stated "Under the circumstances, I knew that he was young, [so] rather than take this boy's life, I figured I would give him a way out without getting myself injured, and that's what I did."

The respondent's current reply states that in order to fully understand these comments a little background information regarding the crimes charged is required. Edmunds was charged with aggravated assault, possession of an instrument of crime, simple assault, and recklessly endangering another person. Judge Richette found Edmunds guilty of aggravated assault. Aggravated assault, 18 Pa. Con. Stat. § 2702 (1994) includes the relevant subtype § 2702(a)(1), a first-degree felony, which

---

[1]The law has changed since Edmunds' trial. Commonwealth v. Morgan, 739 A.2d 1033 (Pa. 1999) (Pennsylvania Supreme Court held that a character witness could not be asked about his knowledge of a criminal defendant's prior bad acts that did not result in conviction). Further, Edmunds is not arguing that Judge Richette erred in allowing the Commonwealth to impeach the witnesses with specific instances.

[2]There was an altercation where a juvenile ran away from Edmunds, went into a house and returned brandishing a firearm. Edmunds then fired his own gun into the air in order to scare/ deter the juvenile from resorting to violence.

encompasses causing or attempting to cause serious bodily injury to another person "intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." Id. Specifically, Judge Richette found Edmunds' behavior was reckless rather than intentional. Edmunds now argues that Judge Richette only found him reckless because of the previous incident.

The Magistrate Judge considered this exchange between counsel and Judge Richette by correctly pointing out that the trial court was free to use the impeachment evidence for the limited purpose of evaluating the credibility of Edmunds' character witnesses and the extent of their knowledge of Edmunds' character for peacefulness. Further, a "judge, as factfinder, is presumed to disregard inadmissible evidence and consider only competent evidence." Commonwealth v. Davis, 421 A.2d 179, 183 n.6 (Pa. 1980). In conclusion the Magistrate Judge stated:

> The judge's remark may indicate that, in her assessment, Petitioner's admission shed light on his reputation in the community as being peaceful and law-abiding. Alternatively the judge may have found Petitioner's admission 'very revealing,' N.T., 9/20/95, at 271-72, in that it shed light on his general credibility and reputation for peacefulness and being law-abiding.... Petitioner's testimony exposed his present cavalier attitude, while on trial for aggravated assault and reckless endangerment, towards use of force and compliance with rules. Petitioner testified in this case that his gun accidentally discharged, N.T., 9/20/95, at 249, and that he was unaware, at the time, that his gun had injured the victim. *Id*. The trial judge, as finder of fact, was required to weigh Petitioner's credibility against these statements. In this context, I find that the trial judge's passing remark to counsel, standing alone, did not override the presumption that the court properly used the character impeachment evidence to deny Petitioner a fair trial. Accordingly, the state court determination is reasonable and does not offend federal precepts.

This analysis is sound. Further, Edmunds currently does not point to any clearly established federal law to solidify his contention, nor does he argue that Judge Richette

unreasonably applied a Supreme Court precedent.

C. Was Edmunds' counsel ineffective for failing to object to the Judge's comments?

The third argument proposed by Edmunds' objections, that Edmunds' trial counsel was ineffective for failing to object to Judge Richette's consideration of the impeachment evidence, is unpersuasive. To succeed on an ineffective assistance of counsel claim, Edmunds needs to show his counsel acted in an objectively unreasonable manner, and that he was prejudiced by that behavior. Strickland v. Washington, 466 U.S. 688 (1984). Also See U.S. v. Santiago, No. Civ. 97-2874, 1997 U.S. Dist. Lexis 10077 (E.D. Pa. 1997) (Dubois J.) (AEDPA case in which the court applied the two prong Strickland analysis to petitioner's ineffective assistance of counsel claim). In this case Edmunds fails to show either prong. There is a presumption that the trial judge will disregard inadmissible evidence. An attorney's failure to remind the trial judge of that presumption is not objectively unreasonable. Furthermore, Edmunds does not state how he was prejudiced by counsel not objecting. Edmunds does not even suggest to this Court that the verdict would have been different had an objection been made.

## V. CONCLUSION

Based upon the aforementioned analysis, Edmunds' objections to the Magistrate Judge's 2002 Report and Recommendation are overruled. This court hereby adopts Magistrate Judge Wells' 2002 Report and Recommendation and dismisses Edmunds' *habeas corpus* petition with prejudice. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALFRED M. EDMUNDS Jr.,** | : | **CIVIL ACTION** |
| **Petitioner** | : | |
| | : | |
| **v.** | : | **NO. 00-6084** |
| | : | |
| **JAMES MORGAN, et al.** | : | |
| **Respondents** | : | |

**ORDER**

AND NOW, this day of September 2005, upon consideration of the Petition for Writ of Habeas Corpus, the Respondents' answer, and record therein, and after review fo the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells, its hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. The Petition for Writ of Habeas Corpus is DENIED and DISMISSED without a hearing; and

3. As Petitioner has failed to make a showing of a denial of a constitutional right, a certificate of appealability is DENIED.

4. The Clerk of the Court shall mark this case closed for all purposes.

BY THE COURT:

____________________________
LAWRENCE F. STENGEL, J.